UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

GARY FLORES, an individual,

    Plaintiff,

v.

STANDARD INSURANCE COMPANY, an Oregon Corporation; and DOES I through 30, inclusive,

    Defendants.

3:09-cv-00501-LRH-RAM

ORDER

Before the court is Plaintiff Gary Flores' Motion to Remand (#9[1]). Defendant Standard Insurance Company ("Standard") has filed an opposition (#13) to which Plaintiff replied (#16). Standard has also filed a motion for leave to supplement its opposition (#17). Plaintiff has filed an opposition (#18) to which Standard replied (#19).[2]

///
///
///
///

---

[1] Refers to the court's docket entry number.

[2] Because the court finds the arguments and evidence contained in Standard's Motion to Supplement (#17) unnecessary to its determination of the issues now before the court, the court will deny the motion.

**I.     Facts and Procedural History**[3]

This is a diversity action arising out of Plaintiff's employment with the State of Nevada as a management analyst in the Welfare Division.[4] As a state employee, Plaintiff was eligible for various insurance benefits through the Public Employee's Benefit Program. One policy for which Plaintiff was eligible and became insured was a long term disability group policy provided by Standard. The policy contained a provision limiting the claimant's benefits to 24 months where the claimant's disability was caused by a mental disorder.

On March 2, 2006, because of a disability, Plaintiff became unable to work. Standard concluded that Plaintiff's condition prevented him from performing the material duties of his job and granted Plaintiff occupation benefits. Following a standard six month waiting period, on September 4, 2006, Plaintiff began receiving occupation benefits.

Also in September 2006, Plaintiff began receiving benefits in the amount of $575.82 from the Public Employees' Retirement System ("PERS"). Plaintiff promptly informed Standard of his receipt of these payments. Plaintiff's monthly long term disability benefit from Standard was $2,097.77, which reflected Plaintiff's maximum monthly benefit of $2,672.59 less the $575.82 in PERS benefits.

Over the next two years, Standard repeatedly reviewed Plaintiff's file and had Plaintiff examined to determine whether his disability was caused by a mental disorder. As a result of these tests, on September 12, 2008, Standard terminated Plaintiff's claim for benefits. The letter informing Plaintiff of the termination provides, "[I]t is more reasonable than not [that] your inability to work is caused or contributed to by a Mental Disorder." (*Id.*, ¶ 62.) As such, the letter informed Plaintiff that Standard was asserting the "24-month Mental Disorder limitation" to

---

[3] The following facts are based primarily on the allegations in the complaint.

[4] Standard is an Oregon corporation with its principal place of business in Oregon. Plaintiff is a citizen of Nevada.

2

Plaintiff's claim. Because Standard concluded Plaintiff became disabled due to his mental disorder on September 4, 2006, his 24-month benefits ended with Standard's payment through September 3, 2008.

On February 7, 2009, Plaintiff appealed and requested a review of Standard's termination of his claim. On July 8, 2009, Standard denied his appeal. In the letter informing Plaintiff of the denial, Standard states that pursuant to the Employee Retirement Income Security Act ("ERISA"), Plaintiff could bring a civil suit against Standard. Plaintiff alleges that ERISA does not apply to the long term disability group policy at issue, and Standard's statement concerning Plaintiff's right to sue is an attempt to mislead Plaintiff into believing his claim is governed by federal law. Plaintiff also alleges, in its letters denying claimants' appeals, Standard regularly includes "irrelevant information solely meant to impugn the character of the claimant." (*Id.*, ¶ 75.)

Plaintiff further alleges that Standard purposefully sets up low reserves on claims to help its financial statements and stock prices and that Standard has implemented a scheme enabling it to terminate benefits after two years. Plaintiff alleges that these business practices and procedures directly influenced Standards' handling of his claims.

In addition, Plaintiff alleges Standard requires its claim handlers to assemble the claimant's medical records and forward the records to a paid medical consultant, whose job it is to minimize the claimant's condition. Pursuant to this practice, Plaintiff alleges Standard repeatedly selects the same Physician Consultants who place the interests of Standard over the interests of the claimant. Plaintiff also alleges that Standard purposefully withholds from its claim handlers fundamental training essential to the good faith handling of claims such that handlers are not capable of fairly handling claims.

On July 30, 2009, Plaintiff commenced this action in the Second Judicial District Court for Washoe County, Nevada. Based on the above-described conduct, Plaintiff asserts the following claims for relief: (1) breach of contract; (2) breach of the duties of good faith and fair dealing; and

3

(3) deceptive trade practices.  Plaintiff seeks general damages, punitive damages, and attorneys' fees and costs.

On September 1, 2009,  pursuant to 28 U.S.C. §§ 1332(a) and 1441, Standard removed the action to this court.  Plaintiff subsequently filed the motion to remand now before the court.

**II.     Legal Standard**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for any district . . . where such action is pending." 28 U.S.C. § 1441(a).  Among other reasons, the district courts of the United States have "original jurisdiction" where there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  28 U.S.C. § 1332(a).

"If . . . it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*citing Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).  The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus*, 980 F.2d at 566.  The defendant always has the burden of establishing that removal is proper. *Gaus*, 980 F.2d at 566.

**III.    Discussion**

Under 28 U.S.C. § 1332(a), Standard can establish federal jurisdiction if (1) the parties are of diverse citizenship and (2) the amount in controversy, exclusive of interests and costs, exceeds $75,000.  28 U.S.C. § 1332(a).  As Plaintiff does not contest diversity of citizenship, the sole jurisdictional question is whether Standard has met its burden of proving that the amount in controversy requirement has been satisfied.

4

In determining whether the defendant has established the amount in controversy, the court first considers whether it is "facially apparent" from the face of the complaint that the jurisdictional amount is met. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 2997). Where, as here, the amount is not apparent from the face of the complaint, the "removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75],000." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). "When the amount is not facially apparent from the complaint, the court may consider facts in the removal petition and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2006) (citations and internal quotations omitted).

Standard argues that the amount in controversy meets the jurisdictional threshold because the amount owed for past due and future benefits plus punitive damages together exceed $75,000. The court will consider whether to include each of these amounts in the amount-in-controversy calculation below.

**A. Benefits**

The parties agree that, at the time of removal, the amount of allegedly past due benefits Standard owed to Plaintiff totaled $11,019.24. In addition, Standard calculates that, when reduced to present value, future benefits in this case total $38,029.99.

The parties dispute whether these potential future benefits can be included in the amount-in-controversy calculation. "[F]ederal removal jurisdiction on the basis of diversity . . . is determined (and must exist) as of the time the complaint was filed and removal was effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129,1131 (9th Cir. 2002) (citations omitted). Because of this rule, numerous courts have held that benefits owed after the commencement of an action cannot be included in the amount in controversy. *See, e.g., Commercial Cas. Ins. Co. v. Fowles*, 154 F.2d 884, 886 (9th Cir. 1946).

However, as the district court recognized in *Albino v. Standard Insurance Company*, these courts have considered whether future benefits may be included in the amount-in-controversy calculation only in relation to the claimant's claim for breach of the insurance contract. 349 F. Supp. 2d 1334, 1339 (C.D. Cal. 2004). Federal case law is clear that where the claimant seeks future benefits under a breach of contract theory, such benefits may be considered in the jurisdictional calculation only where the validity of the contract is at issue. *See, e.g., New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 678 (1936) (holding, where the plaintiff alleged a breach of the insurance contract, plaintiff may only recover future benefits as damages if the insurer repudiates the contract); *Albino v*, 349 F. Supp. 2d at 1339 (C.D. Cal. 2004) (noting that, unless the insurer repudiates the contract, future damages for breach of the contract cannot be included in the amount in controversy).

In *Albino*, the district court held that because the plaintiff did not challenge the validity of the contract, the court could not consider future damages in the amount-in-controversy calculation under the plaintiff's contractual theory. Nonetheless, the court noted that under California law, the plaintiff could recover future damages for tortious breach of the implied covenant of good faith and fair dealing.

For example, in *Egan v. Mutual of Omaha Insurance Company*, the California Supreme Court recognized that although a plaintiff may not recover future policy benefits under a breach of contract theory, a plaintiff may recover such benefits if she prevails on a tortious theory for the breach of the implied covenant of good faith and fair dealing. 620 P.2d 141, 149 n.7 (Cal.1979). The court stated, "[T]he jury may include in the compensatory damage award future policy benefits that they reasonably conclude, after examination of the policy's provisions and other evidence, the policy holder would have been entitled to receive had the contract been honored by the insured." *Id.*

Thus, under a tortious theory for breach of the implied covenant of good faith and fair

dealing, the California courts hold that a plaintiff may recover future benefits as compensatory damages. Because the court can consider compensatory damages when determining the amount in controversy, the court in *Albino* held that it could consider the plaintiff's future benefits in the amount-in-controversy calculation. 349 F. Supp. 2d at 1340.

Here, Plaintiff does not challenge the validity of the contract. *See Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935) ("[M]ere refusal, . . . upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy."). As a result, the court cannot consider future benefits in the amount-in-controversy calculation under Plaintiff's contractual theory of recovery. Instead, if Plaintiff is to recover future benefits, he may do so only pursuant to his claim for the tortious breach of the implied covenant of good faith and fair dealing and only if he is entitled to such benefits under Nevada law.[5]

Although the Nevada Supreme Court has not addressed the issue of whether a plaintiff can recover future benefits under a bad faith claim against an insured, in *Allstate Insurance Company v. Miller*, citing California law, the Nevada Supreme Court recently noted, "[O]nce an insurer violates its duty of good faith and fair dealing, it is liable to pay all compensatory damages proximately caused by its breach . . . ." 212 P.3d 318, 328-329 (Nev. 2009) (*citing Neal v. Farmers Ins. Exch. Co.*, 582 P.2d 980, 986 (Cal. 1978)).

The court finds the reasoning of the California courts persuasive, and in light of the Nevada Supreme Court's statement in *Miller*, the court further finds that were the Nevada Supreme Court to address this issue, it would likely hold that future policy benefits may be awarded as compensatory damages. Because the court may consider compensatory damages when determining the amount in controversy, *see Albino*, 349 F. Supp. 2d at 1340, the court will include the

---

[5]Under Nevada law, the breach of the implied covenant of good faith and fair dealing is a tort. *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).

7

$38,029.99 in future benefits in the amount-in-controversy calculation.[6]

**B.  Punitive Damages**

Although the court has concluded that it will consider the amount of past and future benefits in calculating the amount in controversy, that sum alone, $49,049.23, does not meet the jurisdictional threshold.  As such, Standard urges the court also to consider in its calculation the punitive damages Plaintiff may recover.

"It is well established that punitive damages are part of the amount in controversy in a civil action," *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citations omitted), and in Nevada, the court may award punitive damages against an insurer who acts in bad faith.  *See* Nev. Rev. Stat. § 42.005.  Nonetheless, the mere possibility of a punitive damages award is not sufficient to prove that the amount in controversy requirement has been met.  Instead, Standard must present evidence indicating that the amount Plaintiff seeks will, more likely than not, exceed the amount needed to increase the amount in controversy to $75,000.  *See McCaa*, 330 F. Supp. 2d at 1149 ("[Defendant] provides no evidence that punitive damages, coupled with other relief that Plaintiff seeks, will more likely than not exceed the jurisdictional minimum.")

Although Plaintiff seeks punitive damages, the exact amount sought is unclear.  To establish the likely amount punitive damages, the defendant may introduce evidence of jury

---

[6]The court recognizes that in *McCaa v. Massachusetts Mutual Life Insurance Company*, 330 F. Supp. 2d 1143, 1148 (D. Nev. 2004), this court refused to consider the value of future benefit payments in calculating the amount in controversy.  In so holding, the court primarily relied on the Supreme Court's decision in *New York Life Insurance Company v. Viglas*, 297 U.S. 672, 678 (1936).  There, the Supreme Court held that a plaintiff may only recover future benefits as damages where the insurer repudiates the contract.  *Id.*  Because the insurer in *McCaa* had not repudiated the contract, the court found that the plaintiff was not entitled to the value of future benefit payments.

However, in *Viglas*, the Plaintiff's claim for future benefits was based on the insurer's alleged breach of the insurance contract.  As discussed above, federal courts have generally held that where a plaintiff seeks future benefits under contractual theories, she may only recover future benefits where her claim challenges the validity of the insurance contract as opposed to the extent of the policy's coverage.  *Albino*, 359 F. Supp. 2d at 139 (citations omitted).

In contrast, here, the parties agree that Plaintiff's claim for future benefits is based, not in contract, but on Standard's tortious breach of the implied covenant of good faith and fair dealing.  Thus, *Viglas* is distinguishable, and to the extent *McCaa* is inconsistent with this decision, it is disapproved.

verdicts in cases involving similar facts. *See McCaa*, 330 F. Supp. 2d at 1149 (citation omitted); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002) (citations omitted). To this end, Standard has identified, in cases involving bad faith claims against insurers, various jury verdicts with substantial punitive damages awards. *See Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp. 2d 1168 (D. Nev. 2008) (upholding jury's punitive damages award against one defendant in the amount of $24,000,000 (an 8.18:1 ratio of punitive damages to actual and potential harm), and reducing jury's punitive damages award against another defendant to $26,394,765.39 (a 9:1 ration of punitive damages to actual and potential harm) where (1) defendants handled plaintiff's claim in accordance with a scheme established to deny claims of disabled policyholders so that defendant could augment their profits at the expense of disabled policy holders, (2) defendants' conduct caused $2,932,751.71 in actual monetary harm, and (3) defendants refused to acknowledge any wrongdoing or accept responsibility for their misconduct); *Ace v. Aetna Life Ins. Co.*, 40 F. Supp. 2d 1125 (D. Alaska 1999) (where plaintiff brought bad faith claim against defendant insurer and jury verdict initially awarded $27,009 for wrongful denial of nine months of long-term disability benefits, $100,000 for emotional distress, and punitive damages of $16.5 million, finding the maximum amount of punitive damages a jury could have awarded to be $950,000 and remitting punitive damages award accordingly (a 7.5:1 ration of punitive damages to actual and potential harm)).

Although the facts of the cited cases are not identical to the facts now before the court, the jury verdicts in these cases amply demonstrate the potential for large punitive damages awards in bad faith insurance cases. While the conduct at issue here might not be as egregious as the misconduct involved in these cases, Plaintiff nonetheless has asserted serious allegations of wrongdoing by Standard. As the additional amount needed to meet the amount-in-controversy requirement here is relatively small ($25,950.77, or $75,000 less $49,049.23), the court finds that Standard has demonstrated by a preponderance of the evidence that punitive damages will raise the

amount in controversy over $75,000.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand (#9) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Supplement Opposition to Motion to Remand (#17) is DENIED.

IT IS SO ORDERED.

DATED this 14th day of January, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE